UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TODD KREISLER,

                            Plaintiff,

        -against-

THE HUMANE SOCIETY OF NEW YORK,

                           Defendant.

Case No. 16-cv-08177 (LGS)

# DEFENDANT'S REPLY MEMORANDUM OF LAW
# IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

**DAVIS & GILBERT LLP**

Patricia Hatry
Gregg Brochin
Jacklyn Siegel
1740 Broadway
New York, New York 10019
(212) 468-4800

*Attorneys for Defendant*
*The Humane Society of New York*

# **TABLE OF CONTENTS**

Page

I. THE MISSION OF THE ADA IS HUMANS, WHILE THE MISSION OF DEFENDANT IS ANIMALS: THE HUMANE SOCIETY IS NOT A PUBLIC ACCOMMODATION ................................................................... 1

II. PLAINTIFF DID NOT SUFFER ANY DAMAGES - SERVICE WAS NEVER DENIED BUT RATHER WAS "PHENOMENAL"............................................................................................... 5

III. THE DEFEO DECLARATION IS NOT A SHAM .............................................. 6

IV. THE ADA ALTERATION STANDARD IS INAPPLICABLE TO PLAINTIFF'S ENTRANCE PROPOSALS.................................................. 7

V. PLAINTIFF IGNORES THE "BENEFITS" SIDE OF THE READILY ACHIEVABLE ANALYSIS AND THE COSTS OF HIS PROPOSALS EXCEED THE BENEFITS .......................................... 9

CONCLUSION.................................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Levorsen v. Octapharma Plasma, Inc.*,
  828 F.3d 1227 (10th Cir. 2016) ........................................................................................... 2

*Mary Jo C. v. N.Y. State & Local Ret. Sys.*,
  707 F.3d 144 (2d Cir. 2013) .................................................................................................. 2

*Roberts v. Royal Atl. Corp.*,
  542 F.3d 363 (2d Cir. 2008) .................................................................................................. 9

*Tennessee* v. *Lane*,
  541 U.S. 509 (2004) ............................................................................................................... 1

**Statutes and Rules**

28 C.F.R. Pt. 36, App'x C ........................................................................................................... 2

28 C.F.R. § 36.402(b)(1) ............................................................................................................ 7

28 C.F.R. § 36.403(c)(2) ............................................................................................................ 7

28 C.F.R. § 36.403(f)(1) ............................................................................................................ 8

28 C.F.R. § 36.403(g)(1) ............................................................................................................ 8

42 U.S.C. § 12101(a)(7) ............................................................................................................ 1

42 U.S.C. § 12101(a)(8) ............................................................................................................ 1

42 U.S.C. § 12101(b)(4) ............................................................................................................ 1

42 U.S.C. § 12102(2)(A) ............................................................................................................ 3

42 U.S.C. § 12181(7)(F) ............................................................................................................ 3

42 U.S.C. § 12181(7)(J) ............................................................................................................. 4

42 U.S.C. § 12181(7)(K) ............................................................................................................ 3

42 U.S.C. § 12181(9)) .............................................................................................................. 10

42 U.S.C. § 12183(a)(2) ............................................................................................................ 8

**Other Authorities**

U.S. Dep't of Justice, *ADA Title III Technical Assistance Manual Covering Public Accommodations and Commercial Facilities* § III-1.2000.........................................................2

Defendant The Humane Society of New York (the "Humane Society" or "Defendant"), by and through its attorneys, Davis & Gilbert LLP, respectfully submits this reply memorandum of law in further support of its motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

I.   **THE MISSION OF THE ADA IS HUMANS, WHILE THE MISSION OF DEFENDANT IS ANIMALS: THE HUMANE SOCIETY IS NOT A PUBLIC ACCOMMODATION**

In order to respond to Plaintiff's attempts to fit Defendant into one of the twelve categories of places of public accommodation that are set forth in the ADA, we need to go back to the ADA's underlying Findings and Purpose.  It cannot be disputed that the aim and consequent design of the ADA was to enable the country's many disabled people to be self-sufficient and productive, thereby saving countless taxpayer dollars to care for them.  *See* 42 U.S.C. § 12101(a)(7)–(8).  To accomplish this goal, the ADA did not state that every entity that provides any service is covered under the Act.  Rather, it makes clear that Congress intended "to address the *major* areas of discrimination faced day-to-day by people with disabilities."  *Id.* § 12101(b)(4) (emphasis added).  The ADA thereafter set forth the twelve categories of public accommodations.

Although no prior adjudication has been found on the seminal issue of whether animal shelters with their ancillary services are covered by the ADA, there is case law which provides some guidance.  Indeed, the United States Supreme Court, in 2004, after first summarizing the difficulties and effort that went into passage of the ADA, then instructed that the ADA "forbids discrimination against persons with disabilities in three major areas of public life: employment, which is covered by Title I of the statute; public services, programs, and activities, which are the subject of Title II; and public accommodations, which are covered by Title III."  *Tennessee* v. *Lane*, 541 U.S. 509, 516–17 (2004).  The Second Circuit Court of Appeals endorsed the

foregoing statement, quoting it in its entirety, including the key terminology "major areas of public life." *See Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 167 (2d Cir. 2013).

The ADA regulations cited by Plaintiff make clear that the facilities listed in each of the twelve exhaustive categories of public accommodations are meant to be "representative examples" of the type specified. 28 C.F.R. Pt. 36, App'x C. Any additions to the specific list must therefore be akin to those specified, and The Humane Society is not akin to any of them. As to the Technical Assistance Manual cited by Plaintiff, the one conceivably relevant passage reads:

> Can a facility be considered a place of public accommodation if it does not fall under one of these 12 categories? No, the 12 categories are an exhaustive list. However, within each category the examples given are just illustrations. For example, the category "sales or rental establishments" would include many facilities other than those specifically listed, such as video stores, carpet showrooms, and athletic equipment stores.

U.S. Dep't of Justice, *ADA Title III Technical Assistance Manual Covering Public Accommodations and Commercial Facilities* § III-1.2000.

*Levorsen v. Octapharma Plasma, Inc.*, 828 F.3d 1227 (10th Cir. 2016), cited by Plaintiff, differs substantively and therefore does not require a different result. There, the defendant operated a plasma donation center and argued that it was not a place of public accommodation because it offered payment to the public in exchange for a service rather than the other way around.

Every one of the entities most relied on by Plaintiff in its efforts to squeeze The Humane Society into the statute's categories of public accommodations has to do with caring for oneself, the all-important purpose of the Act. For that matter, every one of the entities listed as examples of the enumerated categories have that same common thread of caring for oneself. Even the

ADA definition of "major life activity," which pertains to whether or not a person is disabled under the statute, lists "caring for oneself" first.  *See* 42 U.S.C. § 12102(2)(A).

What a disabled person does not need to attain self-sufficiency is any caring for others, whether relatives, friends, or pets for whom he might want to assume responsibility.  Pet ownership would only add to the burdens disabled people are faced with daily.  To be a pet owner or pet guardian is to assume the responsibility for different living beings.  Dogs need to be walked outdoors several times daily, bathed, supplied with food and water, trained and groomed.  Cats need to have their nails clipped on a regular basis, their kitty litter cleaned as needed, their hair brushed, etc.  Plaintiff through Medicaid is provided with an attendant six days a week but the role of the attendant is to care for him, and not his pets.  (*See* Hatry Decl. Ex. 3 (Kreisler Tr. 20:17–21:17).)  Pet care is not a Governmental role.

Plaintiff suggests that category (F), which applies to "service establishments," includes all entities that provide services because of the concluding words "other service establishment." 42 U.S.C. § 12181(7)(F).  But "other service establishment[s]" must fit with the representative examples provided.  Each of the (F) examples set forth are entities that provide services to people. One enters a bank or an accountant's office or a shoe store to take care of himself.  Indeed, search the categories (A) through (L)!  Every one of the many entities presented offers services that people access in order to care for themselves, the aim of the ADA.  Plaintiff's suggestion that Defendant's efforts to place animals for adoption makes it a "social service center establishment" fails for the same reason.  *Id.* § 12181(7)(K).

Plaintiff next suggests that Defendant falls within the retail store category, stating that The Humane Society sells its animals for a fee.  Sandra DeFeo, the Humane Society's Executive Director, who was examined at length as to Defendant's adoption procedures, testified that a

3

contract is made with the "pet guardian" (not an "owner") that provides that the animal cannot be sold while under the guardian's care, and if for any reason the guardian cannot continue the animal's care, it must be returned to The Humane Society. The animal is not "purchased" and no fee is charged. Any and all charitable contributions are voluntary. (*See* Hatry Decl. Ex. 12 (DeFeo Tr. 55:5–56:16)).[1]

Plaintiff further suggests that Defendant may be a "place of education." 42 U.S.C. § 12181(7)(J). The Humane Society offers no formal educational programs. Rather, Defendant offers instructions on the care of animals, appears at schools and on television, and supplies veterinarian advice along with its veterinarian treatments. These services are ancillary to its fundamental mission and essential to all such animal facilities. Its instructions as to spaying, neutering, and treatment of animals are an integral part of all animal care shelters. One look at Defendant's facility would belie the bizarre notion that it is a school.

Plaintiff's opposition papers ignore the reason that the statute was passed, ignore the authorities that instruct as to the limitations on the ADA's scope, and instead would include all services available to any people, which would render the twelve categories an exercise in futility. The expansion of the categories covered by the "public accommodation" definition that Plaintiff advocates here would be antithetical to the ADA's goal of enabling all disabled people to care for themselves (while simultaneously enumerating particular categories of daily life that would be regulated), and would thus be contrary to the letter and spirit of the ADA. Therefore, summary judgment should be granted in favor of The Humane Society because it is not a "place of public accommodation" under the ADA.

---

[1] Exhibits 12–13 are annexed to the Declaration of Patricia Hatry, Esq., dated June 5, 2018.

## II. PLAINTIFF DID NOT SUFFER ANY DAMAGES - SERVICE WAS NEVER DENIED BUT RATHER WAS "PHENOMENAL"

The record shows that The Humane Society has always had a portable ramp that can be placed over the steps at the entrance and a bell that visitors can ring for assistance. (Hatry Decl. Ex. 12 (Defeo Tr. 87:15-21, 115:16-17).) The record also shows that Plaintiff's cat received all requested care, that Plaintiff never expressed any concern to staff about the portable ramp, and that instead Plaintiff has only expressed his gratitude for the services Defendant provides for his pet. (*See generally* DeFeo Tr.; Kreisler Tr.; Hatry Decl. Exs. 6–7.) Against this background, not only do the costs of the dramatic remodeling Plaintiff demands plainly outweigh their benefits, as discussed *infra* Part V, but any claim for damages should be dismissed.

To avoid this record and argue that Defendant's portable ramp is inadequate, Plaintiff resorts to mischaracterization of the testimony proffered in this case. For example, far from testifying that the portable ramp "needlessly endangers his safety," Plaintiff testified that it was his wheelchair that was cause for concern, testifying: "It's not the safest thing in the world, you know. It's really not … you don't know if the chair can slide back. It's mechanical. Anything can happen. . . . I did run somebody over with it one time." (Hatry Decl. Ex. 3 (Kreisler Tr 37:13–38:14).) Again he declared: "it's mechanical so anything can happen. In answer to your question, it's very precarious." (*Id*. (Kreisler Tr 39:7–9).) Overall, his factual testimony indicates that his real concern was not Defendant's ramp but his own chair.

And there can be no dispute that Plaintiff testified that he was not embarrassed or humiliated by his experience with Defendant's entrance, as alleged in his Complaint, but instead felt that "to be honest, it's more of an annoyance." (*Id*. (Kreisler Tr. 54:15).) He repeated: "it has annoyed me … all my cases have annoyed me." (*Id*. (Kreisler Tr. 54:23–24).) Plaintiff does not

provide a Declaration in opposition to this motion, but instead resorts to characterizing his own testimony unfairly.

Of particular note is the further testimony of Plaintiff that his pet cat Coco received all services desired at each visit, and that he intends to continue bringing in Coco as Defendant's patient. Plaintiff not only thanked Defendant for its services, but also said: "The service that I get is phenomenal. They're very nice to me." (*Id.* (Kreisler Tr. 62:25-63:3)). Contrary to his assertions now, Plaintiff never told The Humane Society that he thought its portable ramp was unsafe. (*See generally* Kreisler Tr.; Hatry Decl. Exs. 6–7.)

Plaintiff's own testimony demonstrates that this case, unlike other ADA cases adjudicated, is not about the denial of service or disparate service to a person. It is not hard to see that this case—just like the dozens of lawsuits filed by Plaintiff in this District—are driven by financial motivations, as Plaintiff himself testified that he receives money from his lawyer for his cases. (*See* Hatry Decl. Ex. 3 (Kreisler Tr. 5:7–10, 10:23–11:9).) Stripped of that improper motivation, this case is really about the services provided to a pet by an animal shelter. All any pet guardian need do is ring an outside bell, and a member of a large reception staff will come out and receive any pet needing treatment and will transmit to the veterinary staff any instructions a pet guardian cares to give. Plaintiff's deposition testimony illustrates that that was exactly what transpired on the occasion of Coco's first admission to be spayed and on all her subsequent visits. There was no reason, save greed, for this case to have taken up the time of the judiciary and the many charitable contributions given Defendant for animal care.

## III. THE DEFEO DECLARATION IS NOT A SHAM

The Court should consider Ms. DeFeo's declaration in support of Defendant's motion. Ms. DeFeo's decades of experience working for The Humane Society and simple common sense qualify her to make observations concerning the safety of the organization's animals and other

6

statements made in her declaration.  Contrary to Plaintiff's assertions, Ms. DeFeo's deposition testimony does not contradict her declaration.  That she had no personal "knowledge" of the possible "impact on the Humane Society" of specific construction proposals does not contradict her testimony about the impact of major construction on animals or the possibility for delay and unanticipated costs in connection with projects on an old building.  (*Compare* Parker Ex. 13 at 154:25–155:8 *with* DeFeo Decl. ¶¶ 14, 24.)  Nor does it contradict her concerns about obstructing the building's sole entrance, which she unequivocally testified was a primary concern.  (*Compare* Parker Ex. 13 at 160:20–161:14 *with* DeFeo Decl. ¶ 15.)  And as her Declaration makes clear, Ms. DeFeo's statements of opinion and belief are not contradicted by her truthful answers to deposition questions as to whether she had "knowledge" of hypothetical future events.  (DeFeo Decl. ¶¶ 23, 29.)

## IV.  THE ADA ALTERATION STANDARD IS INAPPLICABLE TO PLAINTIFF'S ENTRANCE PROPOSALS

Plaintiff argues that because The Humane Society had some work done on its elevator and painted the interior of the building, those are "alterations" that obligated The Humane Society to open up walls, blow out windows, and crack open the elevator shaft.  Such argument is invalid.  The regulations make clear that alterations do not include "[n]ormal maintenance, . . . painting or wallpapering, . . . or changes to mechanical and electrical systems . . . unless they affect the usability of the building or facility."  28 C.F.R. § 36.402(b)(1).  Because "alterations to . . . hardware, [and] controls . . . shall not be deemed to be alterations that affect the usability of or access to an area containing a primary function," *id.* § 36.403(c)(2), none of the modifications made to the elevator constitute an alteration under the ADA.  Plaintiff has not satisfied his burden to make a "facially plausible demonstration" that electrical and mechanical upgrades to the elevator and a bit of paint could impact usability to such a degree that would constitute

7

alterations under the ADA.  (*See* SMF ¶¶ 6–8.)  Indeed, Plaintiff has not pointed to, and The Humane Society has not found, any case providing that changes and modernization to an elevator car obligate a facility to make structural changes to other parts of the facility.

Moreover, even if the changes to the elevator and efforts to repaint were "alterations," they would not trigger an obligation to make changes to the entranceway (unless readily achievable).  The obligation to modify the path of travel to the altered area only applies if the modification is "not disproportionate to the overall alterations in terms of cost and scope (as determined under criteria established by the Attorney General)."  42 U.S.C. § 12183(a)(2).  The regulations deem such modifications to the path of travel to be disproportionate "when the cost exceeds 20% of the cost of the alteration to the primary function area."  28 C.F.R. § 36.403(f)(1).  The Humane Society paid $103,500 in connection with its elevator in the summer of 2013 (SMF ¶ 8), and $19,900 to paint its interior in 2011 (Hatry Decl. Ex. 13).  Plaintiff's own expert estimates that Proposals 1–4 would cost in the range of $100,000 to implement.  (SMF ¶¶ 42, 44, 49, 58.)  Option 5 would be even more costly, at approximately $200,000–$300,000.  (*Id.* ¶ 59.)  Modifying the entrance as part of the path of travel would have been disproportionate to the overall "alteration" in both instances and thus was not required.  Rather, The Humane Society has satisfied its duty to provide accessible features in the event of disproportionality with the continued availability of the portable ramp.  28 C.F.R. § 36.403(g)(1).

Plaintiff also argues that because The Humane Society installed new handrails in the entranceway and added an additional bell with new signage, it has "altered" the space in a way that obligated it to undergo major construction.  But that minor work was done because it was "readily achievable."  Plaintiff would have this Court declare that any barrier removal that is readily achievable is an alteration that then triggers complete technical compliance unless

8

practically impossible to do so, which would eviscerate the "readily achievable" standard. Moreover, the Second Circuit has made clear that whether or not a change to a facility is an "alteration" that triggers a requirement to engage in additional work to fully comply with the ADA regulations' technical specifications requires a balancing test in that "[t]he greater the change made by a modification to a facility or portion of a facility, the closer it is, in effect, to new construction." *Roberts v. Royal Atl. Corp.*, 542 F.3d 363, 369–70 (2d Cir. 2008) (noting that ("[t]he overall cost of the modification relative to the size . . of the facility or relevant part thereof" and "[t]he scope of the modification" should be considered in determining whether the modification constitutes an alteration). The minor changes referenced by Plaintiff are in no way similar to new construction, and therefore such changes do not trigger the "alterations" standard.

## V. PLAINTIFF IGNORES THE "BENEFITS" SIDE OF THE READILY ACHIEVABLE ANALYSIS AND THE COSTS OF HIS PROPOSALS EXCEED THE BENEFITS

Plaintiff argues that a "plausible proposal" of barrier removal has been articulated and therefore the initial burden under the "readily achievable" standard has been satisfied. This ignores the requirement that a plausible proposal for barrier removal, "*the costs of which, facially, do not clearly exceed its benefits*," is required. *Roberts*, 542 F.3d at 373 (emphasis added) (quotations and citation omitted). Plaintiff has not pointed to any real benefits at all. Instead, he has admitted that his cat received all requested care (SMF ¶ 19) and has not even suggested that all disabled people would benefit from any of the construction projects which would do away with steps and railings that some prefer over a sloped runway. People using walkers or canes or the elderly, who often unsteady on their feet, might well prefer steps to any of the various proposed walkways. Significantly, given an old building with space for no more than one entranceway, major construction would be problematic at best.

9

On the other side of the equation, Plaintiff tellingly notes that "The Humane Society throws the kitchen sink at Plaintiff's proposal." That is because the proposals, as written by Plaintiff's expert and confirmed by his testimony, require a "kitchen sink" of work. As set forth in Defendant's moving papers, Plaintiff's proposals require major construction, opening walls, demolition, numerous permits and government approvals, heavy equipment, and a significant number of unknowns, all with respect to a very old building. (*See, e.g.*, SMF ¶¶ 25–66.) The Humane Society has articulated its concerns about performing such work, including the danger posed to its animals. (*See* SMF ¶¶ 61–62.) That prior interior painting and work on the elevator did not endanger The Humane Society's animals has no bearing on whether the extensive construction proposed for the building's sole entrance, which would be far more invasive, would be harmful to the animals' health and safety.

A public accommodation is only required to affirmatively remove barriers to access that are readily achievable, which means taking actions that are "easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. § 12181(9). Defendant has done so. None of the proposals set forth by Plaintiff's expert are "easily accomplishable" and none of them can be carried out "without much difficulty." Accordingly, summary judgment should be granted on Plaintiff's ADA claims, and supplemental jurisdiction over Plaintiff's State and City claims should be declined.

## CONCLUSION

For the foregoing reasons and those stated in Defendant's moving papers, Defendant respectfully requests that Court grant its Motion for Summary Judgment and dismiss Plaintiff's claims with prejudice.

Dated: New York, New York  
June 5, 2018

Respectfully submitted,

**DAVIS & GILBERT LLP**

By:   /s/ Patricia Hatry  
      Patricia Hatry  
      Gregg Brochin  
      Jacklyn Siegel  
1740 Broadway  
New York, New York  10019  
(212) 468-4800  
phatry@dglaw.com  
gbrochin@dglaw.com  
jsiegel@dglaw.com

*Attorneys for Defendant*  
*The Humane Society of New York*