USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/3/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
TODD KREISLER,                                               :
                                        Plaintiff,           :
                                                             :        16 Civ. 8177 (LGS)
              -against-                                      :
                                                             :        **OPINION AND ORDER**
THE HUMANE SOCIETY OF NEW YORK,                              :
                                        Defendant.           :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

Plaintiff Todd Kreisler brings this action under Title III of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12181 et seq., and the New York City Human Rights Law (the "NYCHRL"), N.Y.C. Admin. Code § 8–107(4)(a).[1] Defendant moves for summary judgment with respect to all of Plaintiff's claims. For the reasons below, Defendant's motion is granted to the extent that Plaintiff challenges the design of Defendant's restroom and water fountain, but is denied in all other respects.[2]

## I. BACKGROUND

The following facts are taken from the Parties' statements pursuant to Federal Rule of Civil Procedure 56.1 and the Parties' submissions on this motion.

### A. The Humane Society

Defendant is a non-profit organization that operates an animal shelter, provides veterinary services and facilitates animal adoptions. Defendant is located at 306 East 59th Street, New York, NY 10002 (the "Building"). The Building was built in 1900, purchased by the

---

[1] The Complaint also raised claims under the New York State Civil Rights Law and for common law negligence, but Plaintiff has voluntarily withdrawn those claims.
[2] Plaintiff's applications to strike are denied as moot, as none of the documents in question were relied upon in this Opinion.

organization in 1959 and renovated prior to 1975.  In 2013, Defendant spent $103,500 to "modernize" the Building's elevators.  The Building has one entrance, which is approximately 20 inches above street level and accessible only via stairs.  The Building's waiting room has built in bench seating, which is not accessible to persons in wheelchairs and is arrayed around the perimeter of the space.  The reception desk where visitors to the Humane Society complete paperwork is 50.5 inches high.  The Building includes a restroom for employees, which is not accessible to persons in wheelchairs.  The restroom is available to non-employees only "if they are having some type of emergency" and cannot "go to use another facility."  The Building once included a water fountain, but it has been removed.

Defendant also owns a building located at 313 East 58 Street, New York 10022, which it purchased for $6,175,000, and uses for storage and lodging for visiting doctors.  As of 2013, Defendant had cash and cash equivalents of $21,474,145.

**B.    Plaintiff's Visits**

Plaintiff owns two cats -- Cinnamon and Coco.  Plaintiff first began visiting the Building in approximately 2014 when Coco became ill.  Plaintiff uses an electric wheelchair.  During Plaintiff's first few visits, he was unable to enter the building because of the stairs; he would alert Defendant's staff by ringing a doorbell or asking a passerby to go inside and get the receptionist.  On these occasions, Defendant's staff came out to the sidewalk and retrieved Coco. Defendants provided all requested care to Coco, and charged Plaintiff for an "office visit."  On Plaintiff's last two visits, in November 2016 and 2017, respectively, Plaintiff was able to enter the Building via a portable ramp put in place by Humane Society staff.  Plaintiff felt "unsafe" using the ramp.  Plaintiff states that his experience with Defendant "annoyed him," because it

2

reminds him of when he could not get on buses "back in the 80s," and has affected him emotionally "to the extent where I want the same access and the same rights as everybody else."

### C. Plaintiff's Proposals

Plaintiff's expert, Michael Mitchel, offers five construction proposals to make the Building's entrance wheelchair accessible. The first two proposals entail building a vertical platform lift and a new exterior stair; each proposal is estimated to take between six and nine months to complete at a cost of over $110,000. Proposal 3 involves building an inclined platform lift and a new exterior stair. It is also estimated to cost approximately $110,000 and take six to nine months to complete. Proposal 4 requires moving the entrance door to a new location and creating an accessible switchback ramp. It is estimated to cost over $91,000, and the Building would be totally inaccessible for two or three days. Proposal 5 reconfigures the Building's existing elevator hoistway to provide a new opening to the exterior at sidewalk level; it is estimated to cost between $200,000 and $300,000.[3]

Each of the proposals requires the use of construction equipment that is likely to produce noise and dust. Each Proposal -- except Proposal 4 -- provides Defendant the option to build a temporary building entrance for an estimated cost of $10,000, thereby allowing Humane Society staff and animals to enter and exit the facility during the entirety of construction. Each Proposal also requires Defendant to secure government permits.

## II. LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is appropriate where the record before the court establishes that there is no "genuine dispute as to any material fact and the movant is entitled to judgment as a matter

---

[3] Determining how long it will take to complete Proposal 5 requires further study.

of law." Fed. R. Civ. P. 56(a). There is a genuine dispute as to a material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113 (2d Cir. 2017) (citations omitted). The court must construe the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in favor of the nonmoving party. *Liberty Lobby*, 477 U.S. at 255; *accord Soto v. Gaudett*, 862 F.3d 148, 157 (2d Cir. 2017) (citations omitted).

When the movant has properly supported its motion with evidentiary materials, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (alteration in original); *accord Dudley v. N.Y.C. Hous. Auth.*, No. 14 Civ. 5116, 2017 WL 4315010, at *14 (S.D.N.Y. Sept. 25, 2017).

**B.    ADA**

Title III of the ADA provides, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). In order to recover under Title III of the ADA, a plaintiff must prove "(1) that she is disabled within the meaning of the ADA; (2) that defendants own, lease, or operate a place of public accommodation; and (3) that defendants discriminated against her by denying her a full and equal opportunity to enjoy the services defendants provide." *Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008) (citing 42 U.S.C. § 12182(a)); *accord Hurley v. Tozzer, Ltd.*, No. 15

Civ. 2785, 2018 WL 1087946, at *2 (S.D.N.Y. Feb. 26, 2018). There are two principal types of discriminatory behavior under the ADA. *See Roberts v. Royal Atl. Corp.*, 542 F.3d 363, 368–69 (2d Cir. 2008); *accord Figueroa v. Hasaki Rest., Inc.*, No. 17 Civ. 6521, 2018 WL 798880, at *1 (S.D.N.Y. Jan. 30, 2018).

First, when a "public accommodation" has already made "alterations" to its facility "in a manner that affects or could affect the usability of the facility or part thereof," discrimination includes "a failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs." 42 U.S.C. § 12183(a)(2); *see Roberts*, 542 F.3d at 368; *accord Thomas v. Ariel W.*, 242 F. Supp. 3d 293, 300 (S.D.N.Y. 2017). Under this provision, when:

> "the entity is undertaking an alteration that affects or could affect usability of or access to an area of the facility containing a primary function, the entity shall also make the alterations in such a manner that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities where such alterations . . . are not disproportionate to the overall alterations in terms of cost and scope."

42 U.S.C. § 12183(a)(2); *see Roberts*, 542 F.3d at 368; *accord Andrews v. Blick Art Materials, LLC*, 268 F. Supp. 3d 381, 394 (E.D.N.Y. 2017).

Second, where a "public accommodation" has not already engaged in "alterations," discriminatory behavior under Title III of the ADA includes "a failure to remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv); *see Roberts*, 542 F.3d at 368–69; *accord Rogers v. Subotic LLC*, No. 18 Civ. 1997, 2018 WL 3918181, at *1 (S.D.N.Y. Aug. 16, 2018). Removal of an architectural barrier qualifies as "readily achievable" when it is "easily accomplishable and able to be carried out

5

without much difficulty or expense." 42 U.S.C. § 12181(9); *accord Brown v. Mermaid Plaza Assocs. LLC*, No. 13 Civ. 760, 2018 WL 2722454, at *9 (E.D.N.Y. Mar. 8, 2018).

### C. NYCHRL

The NYCHRL makes it illegal for proprietors of "public accommodation[s] . . . directly or indirectly[ t]o refuse, withhold from or deny to such [disabled] person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation." N.Y.C. Admin. Code § 8–107(4)(a)(1)(a). The NYCHRL requires that "any person prohibited by the [law] from discriminating on the basis of disability shall make reasonable accommodation to enable a person with a disability to . . . enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." *Id.* § 8–107(15)(a).

Although the statute's language is similar to the ADA, the NYCHRL demands "an independent liberal construction analysis in all circumstances, even where state and federal civil rights laws have comparable language." *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 31 (1st Dep't 2009); *see also Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009) ("Interpretations of New York state or federal statutes with similar wording may be used to aid in interpretation of New York City Human Rights Law, viewing similarly worded provisions of federal and state civil rights laws as a floor below which the City's Human Rights law cannot fall.") (citing The Local Civil Rights Restoration Act of 2005, N.Y.C. Local Law No. 85 (2005)) (emphasis omitted); *accord Andrews*, 268 F. Supp. 3d at 400. The NYCHRL must be "construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York State civil and human rights laws . . . have been so construed." *Loeffler*, 582 F.3d at 278 (quoting N.Y.C. Local Law No. 85 (2005)); *see also Ya-Chen Chen v.*

*City Univ. of N.Y.*, 805 F.3d 59, 75 (2d Cir. 2015) ("[C]ourts must analyze NYCHRL claims separately and independently from any federal and state law claims, construing [its] provisions 'broadly in favor of discrimination plaintiffs to the extent that such a construction is reasonably possible.'") (second alteration in original).

## III. DISCUSSION

For the reasons below, Defendant's motion for summary judgment is denied in substantial part.

### A. ADA Claims

Defendant raises three bases for summary judgment with respect to the ADA claim.[4] First, the Humane Society does not constitute a place of "public accommodation" within the meaning of the ADA. Second, Plaintiff's proposals for renovating the entrance to the Humane Society are not "readily achievable" within the meaning of the ADA. Third, Plaintiff's additional alleged ADA violations do not qualify as "architectural barriers" that must be removed under the ADA. Summary judgment is denied with respect to all claims, except those that relate to the restroom and water fountain in the Building.

#### 1. Place of "Public Accommodation"

The ADA "enumerates 12 categories of 'private entities' that 'are considered public accommodations.'" *Lopez v. Jet Blue Airways*, 662 F.3d 593, 599 (2d Cir. 2011); *see also Kao v. British Airways, PLC*, No. 17 Civ. 0232, 2018 WL 501609, at *4 (S.D.N.Y. Jan. 19, 2018); *accord* Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities, 56 Fed. Reg. 35,544 (July 26, 1991) (codified at 28 C.F.R. pt. 36)

---

[4] Because Defendant does not argue that Plaintiff is not "disabled" within the meaning of the ADA, that element of a *prima facie* ADA case is not discussed.

(interpreting 42 U.S.C. § 12181(7)(A)–(L)).  In this case, the Humane Society potentially falls into four of those twelve categories: (1) "sales or rental establishments," based on the fees associated with adopting an animal; (2) "service establishments," based on the medical care Defendant provides to pets; (3) "places of education," based on seminars held in the Building or (4) "social service center establishments," based on the care and adoption of animals.  *See* Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities, 56 Fed. Reg. at 35,551.

Defendant fails to show that a jury could not reasonably find that at least one of these categories applies.  Defendant argues that all of the statutory categories apply to activities for people, and specifically, that under the doctrines of statutory interpretation *ejusdem generis* and *noscitur a sociis*, the categories of service establishments and social service centers also must be interpreted to reference services provided to people, not animals.  *See Yates v. United States*, 135 S. Ct. 1074, 1085–86 (2015) (defining *noscitur a sociis* as "a word is known by the company it keeps," and *ejusdem generis* as "[w]here general words follow specific words in a statutory enumeration, the general words are usually construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words").  Defendant's position is that the term "public accommodation" is "confined to enumerated establishments that serve people, not animals."

This argument fails.  The premise underlying the argument -- that Defendant "provides services to animals, not people" -- is flawed, because humans keep animals as pets.  When Defendant provides medical care to a pet, the pet's owner receives a service.  Likewise, a person who adopts an animal from Defendant to keep as a pet receives a service.  Under the logic of Defendant's argument, shoemakers -- a paradigmatic service establishment that is mentioned in

8

the statute -- would not qualify as a place of "public accommodation," because they provide services to shoes, not to people. *See* 42 U.S.C. § 12181(7)(F). Such interpretation of the statute is untenable.

Defendant also argues that the Humane Society is not a "public accommodation" because,

> What a disabled person does not need to attain self-sufficiency is any caring for others, whether relatives, friends, or pets for whom he might want to assume responsibility. Pet ownership would only add to the burdens disabled people are faced with daily. To be a pet owner or pet guardian is to assume the responsibility for different living beings.

This argument also fails. The ADA's stated purpose is to ensure that "physical or mental disabilities in no way diminish[es] a person's right to fully participate in all aspects of society . . . ." 42 U.S.C. § 12101 (findings and purpose). Given this broad mandate, no basis exists for excluding disabled persons from the benefits of pet ownership. Defendant's motion for summary judgment on this issue is denied.

### 2. "Readily Achievable"

Defendant argues that summary judgment is appropriate because Plaintiff's proposals for renovating the entrance to the Humane Society are not "readily achievable" within the meaning of the ADA. This argument fails for two reasons. First, a reasonable jury could conclude that the building had been "altered," in which case the "readily achievable" standard would not apply. *See Roberts*, 542 F.3d at 368. Second, even if the "readily achievable" standard did apply, a reasonable jury could conclude that the renovations Plaintiff requests to the Building's entrance are readily achievable.

### a. Alteration

A reasonable jury could find that the Building had been altered and that the alteration had failed to achieve accessibility to the "maximum extent feasible." *See* 28 C.F.R. § 36.402.

> To establish the existence of an alteration, a plaintiff fulfills his or her initial burden of production by identifying a modification to a facility and by making a facially plausible demonstration that the modification is an alteration under the ADA. The defendant then bears the burden of persuasion to establish that the modification is in fact not an alteration.

*Roberts*, 542 F.3d at 371; *accord Rosa v. 600 Broadway Partners*, 175 F. Supp. 3d 191, 206 (S.D.N.Y. 2016). A non-exhaustive list of factors to consider in evaluating whether an alteration has been made include:

1. The overall cost of the modification relative to the size (physical and financial) of the facility or relevant part thereof.
2. The scope of the modification (including what portion of the facility or relevant part thereof was modified).
3. The reason for the modification (including whether the goal is maintenance or improvement, and whether it is to change the purpose or function of the facility).
4. Whether the modification affects only the facility's surfaces or also structural attachments and fixtures that are part of the realty.

*Roberts*, 542 F.3d at 370 & n.5.

Here, a reasonable jury evaluating these factors could conclude that Defendant's $103,500 "modernization" of their elevators constituted an alteration under the ADA, as it was an expensive renovation of structural components for the purposes of improvement. If the elevator "modernization" was an "alteration," then the lower "readily achievable" standard would not apply; Plaintiff would need to show that "those altered areas -- and paths of travel to altered areas that 'contain[ ] a primary function' -- [were] not made readily accessible to disabled individuals 'to the maximum extent feasible.'" *Roberts*, 542 F.3d at 369 (quoting 42 U.S.C. § 12183(a)(2)). A reasonable jury could find that Defendant's renovation had not achieved accessibility to the "maximum extent feasible," because, although the elevators were

10

modernized, they were still inaccessible to persons in wheelchairs. A reasonable jury also could find that opening the elevators to the street was a feasible remediation, as shown in one of Plaintiffs proposals. 42 U.S.C. § 12183(a)(2); *see Roberts*, 542 F.3d at 368; *see also Rosa*, 175 F. Supp. 3d at 208 (S.D.N.Y. 2016) (holding that defendant's refurbishing of a historic elevator, but not bringing it into compliance with the ADA, could constitute an alteration not achieving accessibility to the maximum extent feasible).

### b. "Readily Achievable" Renovations

Summary judgment is also denied because, if a jury found that the elevator "modernization" was not an "alteration," that jury could nevertheless conclude that the renovations Plaintiff proposes are "readily achievable." "The term 'readily achievable' means easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. § 12181(9). Four factors are used to determine whether an action is "readily achievable" under the ADA:

> (A) the nature and cost of the action needed under this chapter; (B) the overall financial resources of the facility or facilities involved in the action; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility; (C) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and (D) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity.

*Harty v. Spring Valley Marketplace LLC*, No. 15 Civ. 8190, 2017 WL 108062, at *12 n.18 (S.D.N.Y. Jan. 9, 2017) (citing 42 U.S.C. § 12181(9)).

In order to establish a *prima facie* showing that a "reasonable accommodation" is "readily achievable" within the meaning of the ADA, "a plaintiff bears only a burden of production that is not a heavy one. That is, it would be enough for the plaintiff to suggest the

existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits." *Roberts*, 542 F.3d at 370 (internal quotation marks and citations removed); *accord Valentine v. Brain & Spine Surgeons of N.Y., P.C.*, No. 17 Civ. 2275, 2018 WL 1871175, at *6 (S.D.N.Y. Apr. 16, 2018). Once a plaintiff has made a "*prima facie* showing that a reasonable accommodation is available, . . . the risk of nonpersuasion falls on the defendant." *Roberts*, 542 F.3d at 370. This "is a fact-specific inquiry that generally does not lend itself to summary judgment." *Brown v. Cty. of Nassau*, 736 F. Supp. 2d 602, 622 (E.D.N.Y. 2010).

Defendants argue that "[a]ll of Plaintiff's proposals for reconstructing the Building's entrance require significant and invasive construction, permits and approvals from multiple city agencies, additional drawings and study, six figure cost expenditures, and risks to the safety and health of the Humane Society's animals and operations." While that might be true, Plaintiff nevertheless has met his "not heavy" burden of production; the monetary and other costs of the proposed renovations are not so facially disproportionate to the benefits of making the Building wheelchair accessible that no reasonable jury could rule for Plaintiff. *See Roberts*, 542 F.3d at 370.

### 3. Additional Violations

Defendant seeks summary judgment with respect to the alleged ADA violations unrelated to the Building entrance -- i.e., the waiting area, bathroom, service counter and water fountain -- on the basis that Plaintiff lacks standing to bring those claims. "[O]nce a plaintiff establishes standing with respect to one barrier in a place of public accommodation, that plaintiff may bring ADA challenges with respect to all other barriers on the premises that affect the plaintiff's particular disability." *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 188 (2d Cir. 2013); *accord Feltzin v. 183 S. Wellwood Ave. Corp.*, No. 16 Civ. 5387, 2017 WL 6994213, at *3

(E.D.N.Y. Oct. 25, 2017).  A barrier "affects the plaintiff's particular disability" only if "he would likely encounter" that barrier.  *Kreisler*, 731 F.3d at 188.

      a. **Waiting Area**

Defendant argues that Plaintiff lacks standing to seek an injunction with respect to the waiting area, because the bench seating "is not for use by individuals in wheelchairs" and "there is enough space in the Building's waiting area for a wheelchair."  This argument fails.  The fact that the current bench seating cannot be used by persons in wheelchairs is precisely the ADA violation that Plaintiff is challenging.  *See* U.S. Dep't of Justice, ADA Title III Technical Assistance Manual Covering Public Accommodations and Commercial Facilities § III-7.5175 ("At least five percent of fixed or built-in seating or tables must be accessible."); *see also Noel v. N.Y.C. Taxi & Limousine Comm'n*, 687 F.3d 63, 69 (2d Cir. 2012) ("[T]he Technical Assistance Manual of the Department of Justice. . . [] is persuasive authority as to the ADA's meaning, unless it is plainly erroneous or inconsistent with the ADA's regulations.").  Likewise, the parties dispute whether the waiting area complies with the space requirements of the ADA, *see* 36 C.F.R. pt. 1191, app. B ("Wheelchair spaces complying with 802.1 shall be provided in accordance with Table 221.2.1.1.").  According to Plaintiff's expert, the waiting room cannot accommodate a wheelchair without blocking lanes of traffic.  Summary judgment is therefore denied as to the waiting area claims.

      b. **Restroom**

Plaintiff does not have standing to challenge the restroom, because it is an "employees only" facility, which does not raise a barrier that he "would likely encounter" upon further visits to the Building.  *Kreisler*, 731 F.3d at 188; *see also Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1048 (9th Cir. 2008) ("[T]he exclusion of a disabled plaintiff from an employees-only restroom does

not violate the ADA."); *Kindle v. Fifth Third Bank*, No. 14 Civ. 6502, 2015 WL 5159890, at *3 (N.D. Ill. Sept. 1, 2015) ("Although Fifth Third Bank is a place of public accommodation, its employees-only restroom is not.").

Plaintiff argues that there is a dispute as to whether the restroom is restricted to employees, and therefore whether Plaintiff "would likely encounter" a problem using it. In support of this argument, Plaintiff points to the deposition of Joseph Fischer, an employee at the Humane Society. But the deposition does not support Plaintiff's argument; Fischer states that non-employees are permitted to use the employee restroom only "if they are having some type of emergency" and cannot "go to use another facility." A reasonable jury could not conclude that Plaintiff is "likely" to encounter an "emergency" situation in which he is permitted to use the bathroom at the Building but cannot do so because of his disability. Summary judgment is granted to Defendant with respect to the restroom.

### c. Service Counter

In contrast to the restroom, Plaintiff is likely to use the service counter upon further visits to the Humane Society, and therefore has standing to challenge it. Defendant argues to the contrary that "Plaintiff has not been hindered in any way by the height of the service counter, as he has paid his bill, filled out forms and provided information to Humane Society staff upon each of his visits." This argument fails, because Plaintiff's ultimate ability to work around an ADA violation in order to interact with the receptionist does not nullify an ADA violation that denies him "equal enjoyment" of the facility. *See* 42 U.S.C. § 12182(a).

Second Circuit precedent "does not stand for the proposition that so long as a disabled individual is permitted to shop (or eat), she cannot have suffered injury under the ADA." *Camarillo v. Carrols Corp.*, 518 F.3d 153, 158 (2d Cir. 2008); *accord Heard v. Statue Cruises*

14

*LLC*, No. 16 Civ. 1079, 2017 WL 2779710, at *4 (S.D.N.Y. June 26, 2017). Summary judgment is warranted only "where all the evidence in the record demonstrates that the defendants have taken all necessary steps 'to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals.'" *Camarillo*, 518 F.3d at 158 (quoting 42 U.S.C. § 12182(b)(2)(A)(iii)). Here, nothing in the record suggests that Defendant has provided a service counter accessible to persons in wheelchairs. Summary judgment is denied as to the service counter.

### d. Water Fountain

Summary judgment is granted with respect to the water fountain. Defendant states that it has removed the water fountain, rendering the issue moot. Plaintiff "den[ies] information and knowledge sufficient to form a belief" about the water fountain, but points to nothing in the record suggesting that the water fountain is still on the premises and raises no argument about it. As there is no evidence in the record from which a reasonable jury could conclude that the Building still has a water fountain, summary judgment is granted on this issue.[5]

### B. NYCHRL

Defendant raises two arguments with respect to Plaintiff's New York City claims. First, that it is entitled to summary judgment with respect to Plaintiff's NYCHRL claims because the Humane Society is not a place of public accommodation and it provided reasonable accommodations. Second, even if summary judgment is not appropriate with respect to the

---

[5] For the same reasons, Plaintiff also lacks standing to challenge the restroom and water fountain under the NYCHRL. *See Phillips v. Pizza*, No. 17 Civ. 6112, 2018 WL 2192189, at *2 (S.D.N.Y. May 14, 2018) ("[D]efault judgment is granted as to the ADA claims relating to the step, but denied as to the other alleged barriers. The result is the same for Plaintiff's claims under the NYSHRL and NYCHRL.")

NYCHRL claims, it should be granted to Defendant with respect to damages. For the reasons below, summary judgment is also denied with respect to the NYCHRL claims.

1. **Public Accommodation**

Defendant argues that it is entitled to summary judgment on Plaintiff's claims under the NYCHRL, because "the Humane Society is not a public accommodation" and it "more than reasonably accommodated Plaintiff." As this argument fails with respect to the ADA, it must also fail with respect to the NYCHRL, which offers broader protection than does the ADA. *See Loeffler*, 582 F.3d at 278 (describing the ADA as "a floor below which the City's Human Rights law cannot fall.") (citations and emphasis omitted). The motion for summary judgment is denied.

2. **Damages**

Summary judgment is also denied with respect to damages. The NYCHRL must be "construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York State civil and human rights laws, including those laws with provisions worded comparably to provisions of this title, have been so construed." N.Y.C. Admin. Code § 8–130; *accord E.E.O.C. v. Bloomberg L.P.*, 29 F. Supp. 3d 334, 340 (S.D.N.Y. 2014) (applying the NYCHRL). The NYCHRL allows for compensatory damages for mental injuries. *See Duarte v. St. Barnabas Hosp.*, No. 15 Civ. 6824, 2018 WL 4440501, at *9 (Sept. 17, 2018). "Mental injury may be proved by the complainant's own testimony, corroborated by reference to the circumstances of the alleged misconduct." *N.Y.C. Transit Auth. v. State Div. of Human Rights*, 577 N.E.2d 40, 45 (N.Y. 1991); *accord Grella v. Avis Budget Grp., Inc.*, No. 14 Civ. 8273, 2016 WL 638748, at *6 (S.D.N.Y. Feb. 11, 2016) (applying the NYCHRL). In such cases, "The New York City Human Rights Commission has

deemed awards of $1,000 to be sufficient in cases where complainants did not establish any particular damage 'other than what a decent and reasonable individual would suffer when faced with such ignorant behavior.'" *Kreisler v. Second Ave. Diner Corp.*, No. 10 Civ. 7592, 2012 WL 3961304, at *14 (S.D.N.Y. Sept. 11, 2012) (quoting *Okoumou v. Cty. Recovery Corp.*, 2009 WL 6910263, at *2 (N.Y.C. Com. Hum. Rts. June 1, 2009)). Larger compensatory damages are justified when the conduct is more flagrant. *See Kreisler*, 2012 WL 3961304, at *14–15 (citations omitted) (applying the NYCHRL and collecting cases).

Here, a reasonable jury could conclude that Plaintiff suffered mental anguish that is as acute as "what a decent and reasonable individual would suffer" under the circumstances. *Id.* at 14. In his deposition, Plaintiff stated:

> Well, in terms of -- emotional distress. I don't have -- if you mean have I suffered any emotional -- injury from where I've seen a doctor, no, but I've been injured in a sense that I haven't been able to access a place freely like everyone else. . . . I want to be able to go into a place. It's like when I was younger, having to get on a bus and back in the 80's, I couldn't get on a bus either but you -- sooner or later, you have to take a stand to it but as far as emotional injury, I wouldn't -- I mean I don't think -- I think it's affected me only to the extent where I want the same access and the same rights as everybody else.

A reasonable jury could credit that testimony and determine that Plaintiff is entitled to compensatory damages.

With respect to punitive damages, "the standard for determining damages under the NYCHRL is whether the wrongdoer has engaged in discrimination with willful or wanton negligence, or recklessness, or a 'conscious disregard of the rights of others or conduct so reckless as to amount to such disregard.'" *Chauca v. Abraham*, 885 F.3d 122, 124 (2d Cir. 2018) (quoting *Chauca v. Abraham*, 89 N.E.3d 475, 481 (N.Y. 2017)). This standard requires "a lower degree of culpability" than is required for punitive damages under other statutes, as it "requires neither a showing of malice nor awareness of the violation of a protected right." *Id.* (quoting

17

*Chauca*, 89 N.E.3d at 481).  In this case, a reasonable jury could conclude that Defendant met this "lower degree of culpability" by acting with a "conscious disregard of the rights of others" in failing to comport with the NYCHRL.  Defendant's motion for summary judgment as to the NYCHRL claims is therefore denied.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED to the extent it challenges the design of the Building's restroom and water fountain, but is DENIED in all other respects.  The Clerk of Court is directed to close the motion at Docket No. 59.

Dated: October 3, 2018
       New York, New York

_____
**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**